## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARY PHILIPS, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE** |
| MAGELLAN MIDSTREAM PARTNERS, | ) | **FEDERAL SECURITIES LAWS** |
| L.P., WALTER R. ARNHEIM, LORI A. | ) | |
| GOBILLOT, EDWARD J. GUAY, CHANSOO | ) | JURY TRIAL DEMANDED |
| JOUNG, STACY P. METHVIN, AARON L. | ) | |
| MILFORD, JAMES R. MONTAGUE, BARRY | ) | |
| R. PEARL, and SIVASANKARAN | ) | |
| SOMASUNDARAM, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Mary Philips ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Magellan Midstream Partners, L.P. ("Magellan" or the "Partnership") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Partnership by ONEOK, Inc. ("ONEOK").[1]

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

2.      On May 14, 2023, Magellan entered into an Agreement and Plan of Merger (the "Merger Agreement") with ONEOK and ONEOK's wholly owned subsidiary Otter Merger Sub, LLC ("Merger Sub").  The Merger Agreement provides that each common unit of Magellan will be converted into the right to receive (a) $25.00 in cash, and (b) 0.667 of a share of ONEOK common stock.[2]

3.      The Partnership's corporate directors subsequently authorized the July 25, 2023, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Partnership unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Partnership's unitholders prior to the forthcoming vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Partnership's unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Magellan unitholders will own approximately twenty-three percent of the combined company following consummation of the Proposed Transaction.

[3] The Special Meeting at which Magellan unitholders are asked to approve Proposed Transaction currently is scheduled for September 21, 2023.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of Magellan common units.

10.     Defendant Magellan is a Delaware limited partnership, with its principal executive offices located at One Williams Center, Tulsa, Oklahoma 74172.  Magellan's units trade on the New York Stock Exchange under the ticker symbol "MMP."  Magellan is a publicly traded partnership formed in August 2000 that primarily transports, stores and distributes refined petroleum products and crude oil.  Magellan owns the longest refined petroleum products pipeline system in the country, with access to nearly fifty percent of the nation's refining capacity and can store more than one hundred million barrels of petroleum products such as gasoline, diesel fuel and crude oil.  As of December 31, 2022, the Partnership's asset portfolio consisted of (a) the refined products segment, comprised of Magellan's approximately

9,800-mile refined petroleum products pipeline system with fifty-four terminals and two marine storage terminals; and (b) the crude oil segment, comprised of approximately 2,200 miles of crude oil pipelines, a condensate splitter and thirty-nine million barrels of aggregate storage capacity, of which approximately twenty-nine million barrels are used for contract storage.

11.     Defendant Walter R. Arnheim is and has been a director of Magellan GP at all times relevant hereto.

12.     Defendant Lori A. Gobillot is and has been a director of Magellan GP at all times relevant hereto.

13.     Defendant Edward J. Guay is and has been a director of Magellan GP at all times relevant hereto.

14.     Defendant Chansoo Joung is and has been a director of Magellan GP at all times relevant hereto.

15.     Defendant Stacy P. Methvin is and has been a director of Magellan GP at all times relevant hereto.

16.     Defendant Aaron L. Milford is and has been President and Chief Executive Officer of the Partnership and a director of Magellan GP at all times relevant hereto.

17.     Defendant James R. Montague is and has been a director of Magellan GP at all times relevant hereto.

18.     Defendant Barry R. Pearl has been Chairman of the Board and a director of Magellan GP at all times relevant hereto.

19.     Defendant Sivasankaran Somasundaram is and has been a director of Magellan GP at all times relevant hereto.

20.     Defendants identified in paragraphs 11-19 are collectively referred to herein as

the "Board" or the "Individual Defendants."

## **SUBSTANTIVE ALLEGATIONS**

### **The Proposed Transaction**

21.     On May 14, 2023, ONEOK and the Partnership jointly announced in relevant

part:

> TULSA, Okla. – May 14, 2023 – ONEOK, Inc. (NYSE: OKE) ("ONEOK") and
> Magellan Midstream Partners, L.P. (NYSE: MMP) ("Magellan") today
> announced that they have executed a definitive merger agreement under which
> ONEOK will acquire all outstanding units of Magellan in a cash-and-
> stock transaction valued at approximately $18.8 billion including assumed debt,
> resulting in a combined company with a total enterprise value of $60.0 billion.
> The consideration will consist of $25.00 in cash and 0.6670 shares of ONEOK
> common stock for each outstanding Magellan common unit, representing a
> current implied value to each Magellan unitholder of $67.50 per unit, for a 22%
> premium, based on May 12, 2023 closing prices.

> * * *

> ### **CEO PERSPECTIVE:**

> "ONEOK has a long history and track record of being at the forefront of
> transformational transactions.  The combination of ONEOK and Magellan will
> create a diversified North American midstream infrastructure company with
> predominately fee-based earnings, a strong balance sheet and significant
> financial flexibility focused on delivering essential energy products and services
> to our customers and continued strong returns to investors," said Pierce H.
> Norton II, ONEOK president and chief executive officer.   "Our expanded
> products platform will present further opportunities in our core businesses as
> well as enhance our ability to participate in the ongoing energy transformation
> with an increased presence in sustainable fuel and hydrogen corridors.  We are
> excited about the future of our combined companies and look forward to
> welcoming Magellan's well-respected employees to ONEOK," added Norton.

> "Throughout more than 20 years as a publicly traded company, Magellan has
> remained focused on safe and responsible operations, financial discipline and
> long-term investor value.  We believe ONEOK shares these priorities, and we
> are pleased to join them in creating a stronger, more diversified midstream
> company," said Aaron Milford, Magellan president and chief executive officer.
> "We believe the premium offered maximizes value creation for Magellan's

unitholders and reflects the essential nature of Magellan's assets and service offerings as well as the quality of our talented and innovative employees.  This transaction provides a significant upfront cash component and an opportunity for Magellan investors to benefit from the attractive cash dividend offered by the combined company going forward."

**TRANSACTION DETAILS:**

Magellan will be merged into a newly created 100% wholly-owned subsidiary of ONEOK.

Each Magellan unitholder will receive $25.00 in cash and 0.6670 shares of ONEOK stock per unit.  This represents a 22% premium to the Magellan closing price on May 12, 2023.

The transaction is expected to close in the third quarter of 2023 and has been unanimously approved by the board of directors of both companies.  ONEOK has secured $5.25 billion in fully committed bridge financing for the proposed cash consideration.  The closing of the transaction is subject to customary closing conditions, including the approvals of both ONEOK shareholders and Magellan unitholders, as well as Hart Scott Rodino Act clearance.

Following the close of the transaction, Pierce Norton will continue to serve as chief executive officer of the combined company.  ONEOK intends to seek and nominate one or two director(s) serving on the board of Magellan's general partner.

**TAX IMPLICATIONS:**

The transaction will be a taxable event for Magellan unitholders and will cause ONEOK to have a step-up in tax basis approximately equal to the aggregate purchase price of Magellan units and Magellan debt assumed (approximately $18.8 billion).  The premium and cash portion of the consideration may assist with potential tax implications for Magellan unitholders occurring from this transaction.  This transaction is expected to defer significant corporate cash tax liability into future periods for the combined entity.

* * *

**ADVISORS:**

Goldman Sachs & Co. LLC is serving as lead financial advisor to ONEOK and Goldman Sachs Bank USA is providing fully committed bridge financing.  BofA Securities and TPH&Co., the energy business of Perella Weinberg Partners, also advised ONEOK.  Kirkland & Ellis LLP is serving as ONEOK's legal advisor.

Morgan Stanley & Co. LLC is serving as financial advisor to Magellan. Latham & Watkins LLP and Richards, Layton & Finger, P.A. are acting as Magellan's legal advisors.

**The Materially Incomplete and Misleading Proxy Statement**

22.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on July 25, 2023  The Proxy Statement, which recommends that Magellan unitholders vote their units in favor of the Proposed Transaction, fails to disclose material information to Partnership unitholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Magellan and ONEOK; (b) the financial analyses that support the fairness opinion provided by the Partnership's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) potential conflicts of interest faced by Morgan Stanley and Partnership insiders.

***Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for Magellan and ONEOK***

23.     The Proxy Statement fails to disclose material information concerning the Partnership's financial forecasts, including the line items underlying projected: (a) Adjusted EBITDA; (b) Free Cash Flow; (c) Adjusted Free Cash Flow After Distributions; and (d) Unlevered Free Cash Flow derived by Magellan, each with respect to the "Magellan Forecasted Financial Information."

24.     The Proxy Statement further fails to disclose material information concerning ONEOK's financial forecasts, including the line items underlying projected Unlevered Free Cash Flow derived by Magellan with respect to the "ONEOK Forecasted Financial Information."

***Material Misrepresentations and/or Omissions Concerning Morgan Stanley's Financial Analyses***

25.     The Proxy Statement fails to disclose material information concerning Morgan Stanley's financial analyses.

26.     With respect to the *Discounted Cash Flow Analysis* of Magellan performed by Morgan Stanley, the Proxy Statement fails to disclose the terminal year metric used to calculate the terminal values of Magellan.

27.     With respect to the *Comparable Public Company Analysis* of Magellan and *Precedent Transactions Analysis* performed by Morgan Stanley the Proxy Statement fails to disclose the respective individual financial metrics for each of the selected companies and transactions analyzed by the financial advisor.

28.     With respect to the *Equity Research Analysts' Price Targets* analysis of Magellan performed by Morgan Stanley, the Proxy Statement fails to disclose the individual price targets observed and their respective sources.

29.     With respect to the Precedent *Premia Range* analysis performed by Morgan Stanley, the Proxy Statement fails to disclose the identities of the transactions and the respective individual premiums observed for each.

30.     With respect to the *Discounted Cash Flow Analysis* of ONEOK performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) the terminal year metric used to calculate the terminal values of ONEOK; and (b) ONEOK's terminal values.

31.     With respect to the *Comparable Public Company Analysis* of ONEOK performed by Morgan Stanley, the Proxy Statement fails to disclose the respective individual financial metrics for each of the selected companies analyzed by the financial advisor.

32.     With respect to the *Equity Research Analysts' Price Targets* analysis of ONEOK performed by Morgan Stanley, the Proxy Statement fails to disclose the individual price targets observed and their respective sources.

***Material Misrepresentations and/or Omissions Concerning Morgan Stanley's and Partnership Insiders' Potential Conflicts of Interest***

33.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Morgan Stanley, including a quantification of the actual fee Morgan Stanley will be paid upon the closing of the Proposed Transaction.

34.     The Proxy Statement also fails to disclose whether any of ONEOK's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

35.     The Proxy Statement similarly fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Magellan insiders and ONEOK, who participated in all such communications, when they occurred and their content.

36.     The omission of the above-referenced information renders statements in the "Certain Unaudited Forecasted Financial Information," "Opinion of Magellan's Financial Advisor," "Background of the Merger," and "Interests of Certain Magellan GP Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

37.     Absent disclosure of the foregoing material information prior to the unitholder vote, Plaintiff and the other unitholders of the Partnership will be unable to make a sufficiently

informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Magellan**

38.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Magellan is liable as the issuer of these statements.

40.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Partnership, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

41.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to unitholders.

43.     The Proxy Statement is an essential link in causing Plaintiff and the Partnership's unitholders to approve the Proposed Transaction.

44.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Magellan within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Magellan and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

50.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Partnership, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Partnership unitholders;

B.     In the event defendants consummate the Proposed Transaction,

rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

        C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

        D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

        E.      Granting such other relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  August 28, 2023          **LONG LAW, LLC**

          By:   */s/ Brian D. Long*
                Brian D. Long (#4347)
                3828 Kennett Pike, Suite 208
                Wilmington, DE 19807
                Telephone: (302) 729-9100
                Email: BDLong@LongLawDE.com

                *Attorneys for Plaintiff*